NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 22 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FILANDER SALAZAR
VASQUEZ; EVANS MATTHEW
SALAZAR MUNGUIA; MARIA LUZ
MUNGUIA SALAZAR; KEVIN
EDUARDO SALAZAR MUNGUIA,

Petitioners,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No. 22-1214

Agency Nos.
A209-833-741
A209-833-742
A209-992-935
A209-992-936

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 4, 2023
Pasadena, California

Before: WARDLAW and BUMATAY, Circuit Judges, and BENCIVENGO,
District Judge.[**]

Filander Salazar Vasquez ("Salazar"), collectively with his wife, Maria Luz

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Cathy Ann Bencivengo, United States District Judge
for the Southern District of California, sitting by designation.

Munguia Salazar ("Munguia"), and their two children, Kevin Eduardo Salazar Munguia and Evans Matthew Salazar Munguia, all natives and citizens of El Salvador, petition for review of a decision by the Board of Immigration Appeals ("BIA") dismissing the family members' appeal of an Immigration Judge's ("IJ") denial of their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") in this consolidated case.  We have jurisdiction under 8 U.S.C. § 1252, and we deny in part and grant and remand the petition in part.

1.  The agency did not err in denying Salazar's application for asylum and withholding of removal based on his membership in the particular social groups ("PSGs") "married Salvadoran males who are public sector employees" and "married Salvadoran males who are perceived to have access to information and resources because of their government employment."  Even assuming, without deciding, that the BIA abused its discretion in finding that Salazar forfeited his challenge to the IJ's determination regarding past persecution and applied an improper legal standard when analyzing immutability, Salazar is ineligible for asylum or withholding of removal because the record is devoid of evidence that his employment-based PSGs are socially distinct.  *See Macedo Templos v. Wilkinson*, 987 F.3d 877, 882 (9th Cir. 2021) (citing *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)).

22-1214

The reports and testimony Salazar provided do not show that members of his proposed PSGs are "set apart within [Salvadoran] society in some significant way." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 244. Rather, they show that public sector employees, like members of Salvadoran society at large, face general criminal violence when traveling or working in certain neighborhoods due to the general "insecurity that prevails in those sectors." While we do not hold that Salazar's employment-based PSGs are not cognizable as a matter of law, the evidence Salazar offers here is insufficient to compel the conclusion that Salazar's PSGs are socially distinct in El Salvador. *See Conde Quevedo v. Barr*, 947 F.3d 1238, 1243 (9th Cir. 2020).

2. The BIA did not err in concluding that Salazar failed to preserve his claim to relief based on political opinion. The BIA "has the authority to prescribe procedural rules that govern the proceedings before it, and procedural default rules are consistent with this authority." *Honcharov v. Barr*, 924 F.3d 1293, 1296 (9th Cir. 2019) (per curiam). Although the BIA characterized the procedural default of Salazar's political opinion claim as a "waiver" rather than a "forfeiture," "[t]he terms waiver and forfeiture . . . often [are] used interchangeably by jurists and litigants," and both require at least a threshold determination of whether the claim has been abandoned—intentionally or otherwise. *Hamer v. Neighborhood Hous. Servs. of Chicago*, 548 U.S. 17, 20 n.1 (2017). The BIA's inadvertent use of the

term "waiver," without more, does not suggest that the BIA applied an incorrect legal standard when it concluded that Salazar failed to preserve his political opinion claim.

In *Honcharov*, we "le[ft] it for another case to decide what standard of review we should apply to the Board's decision to invoke [such] a default." 924 F.3d at 1297. We need not decide here which standard applies because even under de novo review, Salazar failed to preserve his political opinion claim. In his I-589 Application for relief, Salazar checked the box labeled "Political Opinion" indicating that he sought protection on that ground. And Salazar testified at the removal hearing that his job occasionally afforded him "access to the city mayor" in areas that his employer, the National Sewer and Aqueduct Administration, serviced. *Cf. Navas v. INS*, 217 F.3d 646, 659 n.19 (9th Cir. 2000) (recognizing that persecution "of those who work for or with political figures [can] be on account of the political opinion of their employer even if the nature of their work for or with that person is not in itself political"). However, Salazar and Munguia testified that Salazar fears persecution based only on his perceived access to information; they did not testify or argue through counsel that any persecution was or would be on account of an actual or imputed political opinion held by Salazar or any public official with whom he worked. Absent any arguments or evidence supporting Salazar's political opinion claim other than the I-589 checkbox, the

22-1214

BIA correctly determined that Salazar forfeited the claim.

3. In his opening brief, Salazar does not contest and therefore forfeits any challenge to the BIA's determination that he did not raise the IJ's denial of CAT protection on appeal. *See Lopez-Vasquez v. Holder*, 706 F.3d 1072, 1079–80 (9th Cir. 2013) (issues not specifically raised and argued in a party's opening brief are forfeited).

4. The agency erred by failing to address Munguia and the two children's claims to asylum, withholding of removal, and protection under CAT based on their membership in the PSG "immediate family members of Filander Salazar Vasquez." Ample testimony and arguments in the record before the IJ made it clear that the family members sought relief based on their membership in the family-based PSG. All three family members wrote in their I-589 Applications that they fear "be[ing] harmed by the people who were looking for [Salazar Vasquez]." At the removal hearing, Munguia testified about the threat her 15-year-old son received that specifically mentioned her family, and counsel noted that the family members were diagnosed with PTSD after "suffer[ing] past persecution on account of their membership in a particular social group . . . as immediate family members of Filander Vasquez Salazar [sic]." While the agency is entitled to apply its own procedural default rules, it cannot invoke those rules to the effect of "ignor[ing] arguments raised by a petitioner entirely." *Honcharov*,

924 F.3d at 1296 n.2 (internal quotation marks omitted).  We therefore grant the petition in part and remand to the agency to consider the family members' eligibility for relief in the first instance.

**PETITION DENIED IN PART AND GRANTED AND REMANDED IN PART**.[1]   Each side shall bear its own costs.

---

[1] We deny the petition as to Filander Salazar Vasquez without prejudice to any reconsideration by the agency or any claims to relief he may raise in the future.